ERNEST WELLS v. STURDIVANT LIFE INSURANCE COMPANY

No. 7118DC117

(Filed 31 March 1971)

1. Trial § 10; Witnesses § 7— judge's examination of witness
   A judge may ask a witness clarifying questions.

2. Insurance § 37— action on life policy — evidence — premium-collecting practices of the insurer
   In a beneficiary's action to recover on a life insurance policy, it was proper for the trial judge to examine the witnesses on the premium-collecting practices of the insurer and its agents, where the issue in the action was whether the insured had paid the initial premium on the policy.

3. Rules of Civil Procedure § 41— motion for involuntary dismissal — sufficiency of plaintiff's evidence
   The defendant's motion for an involuntary dismissal of the action in a trial without a jury challenges the sufficiency of plaintiff's evidence to establish his right to relief. G.S. 1A-1, Rule 41(b).

4. Insurance § 15— action on life policy — proof of payment of initial premium — prima facie case
   In an action to recover on a policy of life insurance, the beneficiary's evidence that a properly executed policy was delivered to the insured and that the policy explicitly stated that the initial

---

Wells v. Insurance Co.

---

premium had been paid, *held* sufficient to raise a *prima facie* case that the insured had paid the initial premium in compliance with the policy terms and that the policy was in force on the date of the insured's death.

5. **Evidence § 8— prima facie case**

When the facts in evidence make out a *prima facie* case, it is one for submission to the jury.

6. **Appeal and Error § 24— broadside assignment of error**

An assignment of error which attempts to present several propositions of law is broadside.

7. **Appeal and Error § 26— exception to the judgment — question presented**

An exception to the judgment does not challenge the sufficiency of the evidence to support the findings of fact.

APPEAL by defendant from *Kuykendall, District Court Judge,* 12 October 1970 Session of District Court held in GUILFORD County.

This civil action was tried by the court without a jury. Plaintiff is seeking to recover $4,000 on a policy of life insurance.

In the face of the policy it was stated that it was issued 1 November 1968 on the life of Jerome Wells. The policy was for $2,000 with a double indemnity feature in case of accidental death. Plaintiff in this action, Ernest Wells, was the named beneficiary. Jerome Wells died accidentally on 27 November 1968. Upon demand, the defendant refused payment contending in its answer that the policy had never been "issued" and was not in force at the time of the death of Jerome Wells because the initial premium had not been paid.

At a pretrial conference it was stipulated, among other things, that:

"(a) That Jerome Wells died on November 27, 1968.

(b) That plaintiff is designated as beneficiary in policy number M33335.

(c) That plaintiff has demanded payment of the defendant in the sum of Four Thousand Dollars ($4,000.00) and the defendant has refused to pay plaintiff said money.

(d) That exhibit A as attached to the complaint is a true and exact copy of policy number M33335.

(e) It is stipulated that the agent who solicited application from Jerome Wells was licensed by the State of North Carolina as a life, accident, and health agent for Sturdivant Life Insurance Company.

(f) That Jerome Wells died by accidental means as defined in policy number M33335 and if plaintiff is entitled to anything under said policy he would be entitled to collect under the double indemnity feature of said policy."

The policy, which was introduced into evidence, showed an issue date of 1 November 1968 and that the monthly premium was "7.16." It is signed by the president and secretary of the defendant and reads in part as follows:

"CONSIDERATION. This policy is issued in consideration of the statements made in the application herefor, and the payment in advance of at least one months' premiums as stated above.

POLICY PROVISIONS. This policy is effective on the Issue Date and accepted subject to all of the conditions and provisions set forth on this and the following pages, all of which are hereby made a part of this contract.

MONTHLY PREMIUM. Payable on or before the Issue Date and on or before the first day of each successive month thereafter until the death of the Insured or until premiums for 20 years shall have been paid.

Executed at the Home Office of the Company at North Wilkesboro, North Carolina as of the Date of Issue, from which date policy years shall be computed unless otherwise provided."

Plaintiff's evidence, taken in the light most favorable to him, tended to show that Wayne Freeman (Freeman), defendant's agent, after receiving the completed policy from the defendant, delivered it to the home as directed by Jerome Wells. Sometime before Jerome Wells died, Freeman delivered "a receipt" to Patricia Ann Wells, the daughter of Ernest Wells, at her home and she gave it to Jerome Wells. After the death of Jerome Wells, the insurance policy was found among his personal effects by his sister, Flora McDonald, who is also the sister of the plaintiff. Freeman testified as plaintiff's witness that he did not receive any money for the premium on the

policy delivered to Jerome Wells which he sold during the week of 14 October 1968. Freeman's weekly reports to the defendant dated 14 October 1968 revealed that he sold insurance totaling "26.72" and included Jerome Wells in a report as one of those to whom he had sold a policy at a premium of "7.16." Freeman testified further that he reported to the defendant for the week of 14 October 1968 that he "sold insurance with monthly premiums totaling Twenty Six and 72/100 ($26.72) Dollars and I collected premiums on insurance already in force in the amount of One Hundred One and 63/100 ($101.63) Dollars. I sent One Hundred One and 63/100 ($101.63) Dollars to the company for the week of October 14, 1968, and that amount reflected a Twenty Six and 72/100 ($26.72) Dollars increase over the previous week's remittance to the company."

Defendant offered the testimony of Lynn Price (Price) that he was an assistant vice-president of the defendant and that the application records of agents working out of the Charlotte office were kept by him or under his supervision. He testified:

"The application record of agent Wayne Freeman for the week of October 14, 1968, shows that the initial premium for the policy of insurance applied for by Jerome Wells was Seven and 16/100 ($7.16) Dollars. The record also shows that this amount was not collected. The weekly deposit slip of agent Wayne M. Freeman for the week of October 14, 1968, shows that One Hundred One and 63/100 ($101.63) Dollars was collected by agent Freeman on insurance already in force and sent in to the company. It also shows that no funds were sent in by agent Freeman for premiums on applications taken during that week. All funds sent in by agent Freeman during that week were for premiums collected on insurance already in force."

Price also testified, when questioned by the judge: "I do know that agents *often* collected the first premium when they delivered the policy." (Emphasis added.)

After hearing the evidence, the judge found, among other things, that the premium on the insurance policy was paid, that the policy was in effect at the time of the death of the insured on 27 November 1968, and that the defendant was indebted to plaintiff in the sum of $4,000. From the judgment entered that the plaintiff have and recover of the defendant the sum of

$4,000, the defendant appealed to the Court of Appeals.

*Wade C. Euliss for plaintiff appellee.*

*E. James Moore for defendant appellant.*

MALLARD, Chief Judge.

[1, 2]   Defendant contends in its assignments of error numbered 1 and 3 that the trial judge committed error in questioning the plaintiff's witness Freeman and the defendant's witness Price concerning collection of premiums on other policies sold by Freeman and listed on the weekly application record of Freeman. The questions asked by the judge do not appear in the record. The answers of the witnesses appear to be made in a proper area of investigation in this case. It is well-established law in North Carolina that the judge may ask a witness clarifying questions. These assignments of error are without merit.

At the close of plaintiff's evidence and again at the close of all the evidence, the defendant moved for an involuntary dismissal of plaintiff's action under Rule 41(b) on the ground that upon the facts and the law, the plaintiff has shown no right to relief. Defendant assigns as error the failure of the trial court to allow his motions.

[3]   This motion under Rule 41(b) in this action tried by the court without a jury challenges the sufficiency of the plaintiff's evidence to establish his right to relief. In determining the sufficiency of the evidence in this case, when the trial judge *denied* defendant's motion made at the close of all the evidence for dismissal under Rule 41(b) of the Rules of Civil Procedure, he was guided by the same principles expressed under our former procedure with respect to the sufficiency of the evidence to withstand the motion for nonsuit.

However, under Rule 41(b), if a trial judge *allows* the defendant's motion to dismiss made at the close of plaintiff's evidence on the grounds that upon the facts and the law the plaintiff has shown no right to relief, the court, as the trier of the facts, should *determine* the facts and render judgment against the plaintiff. The trial judge may decline to render any judgment until the close of all the evidence. Then if the trial judge renders judgment on the merits against the plaintiff, he

shall make findings as provided in Rule 52(a). G.S. 1A-1, Rule 41(b).

[4] Defendant alleges and argues that the policy was not "issued" because the premium had not been paid. The question of whether the premium had been paid was a question of fact to be decided by the trier of the facts. The defendant in its answer alleges: "A policy form bearing number M33335 * * * was *completed* by the defendant but the policy was not issued * * * ." (Emphasis added.) Therefore, the proper execution of the policy by the officials of the defendant was not at issue herein.

The word "issued" when used in connection with a policy of insurance may have more than one meaning, depending upon the manner in which it is used. In this connection, the Supreme Court of Oregon said in the case of *Stringham v. Mutual Life Ins. Co.*, 75 P. 822 (1904):

> "We will dispose first of the controversy relative to the meaning of the term 'issued,' as employed in the application, it being insisted on the part of the plaintiff that it signifies simply the completion and signing up of the policy by the secretary and its execution at the office of the company, while, upon the other hand, it is contended that it includes as well the delivery of the policy to the applicant. Among the many cases that have passed under our notice, the term seems to have been used interchangeably to denote either one or the other of these conditions, but we have been cited to no case that attempts to determine as a general rule when an insurance policy is deemed issued. We are impressed that the term has a double application, and its meaning is to be determined by the relation in which it is employed."

In the case before us no issue was raised as to the insured having actual possession of the policy at his death. Also, there was no finding and no evidence to support a finding that there was a conditional delivery of the policy. *McKerley v. Insurance Co.*, 201 N.C. 502, 160 S.E. 576 (1931).

In *Couch on Insurance 2d*, § 10:31, it is stated:

> "The insured's possession of a policy raises a presumption of proper deliver after performance of all conditions prece-

dent, or, as often stated, makes a prima facie case on the issue of delivery. So, possession of the policy after the death of the insured ordinarily raises the presumption that it has been delivered and paid for, or that credit has been extended."

In *Waters v. Annuity Co.*, 144 N.C. 663, 57 S.E. 437 (1907), the rule is stated:

"The fact that the policy in a given case has been turned over to the insured is not conclusive on the question of delivery. This matter of delivery is largely one of intent, and the physical act of turning over the policy is open to explanation by parol evidence. It does, however, make out a *prima facie case* that there is a completed contract of insurance as contained in the policy."

[5] "When the facts in evidence make out a *prima facie* case, it is one for submission to the jury. * * * The significance of '*prima facie* case' has been stated clearly and often. * * * " *Insurance Co. v. Motors, Inc.*, 240 N.C. 183, 81 S.E. 2d 416 (1954).

The evidence from the witnesses offered by plaintiff with respect to whether the premium was paid is contradictory. However, the policy introduced into evidence was signed by defendant's president and secretary and states clearly: "This policy *is issued in consideration of* the statements made in the application herefor, and the payment in advance of at least one month's premiums as stated above." (Emphasis added.)

Applying the pertinent rules, we conclude that plaintiff's evidence made out a *prima facie* case. Defendant does not allege nor offer evidence of fraud. *Williamson v. Insurance Co.*, 212 N.C. 377, 193 S.E. 273 (1937) ; see also *Grier v. Ins. Co.*, 132 N.C. 542, 44 S.E. 28 (1903). Moreover, in *Murphy v. Insurance Co.*, 167 N.C. 334, 83 S.E. 461 (1914), it is said:

"It is well established in this jurisdiction that, in the absence of fraud and in so far as the contract of insurance is concerned, the delivery of an insurance policy absolute and unconditional is a waiver of the stipulation for a previous or cotemporaneous *(sic)* payment of the first premium."

Plaintiff's evidence in this case, while contradictory, did not establish the defense of the defendant. The cases cited by

defendant to support its contention that the evidence did establish its defense are distinguishable. The questions of whether the premium was paid and whether the policy was delivered conditionally related to questions of fact to be resolved as other issues of fact. The trial judge found against the defendant.

There was ample evidence and stipulations to support the material findings by the trial judge that the $7.16 premium on the insurance policy was paid, that the policy was in effect at the time of the death of the insured on 27 November 1968, and that the defendant was indebted to the plaintiff in the sum of $4,000. The trial judge correctly denied the defendant's motion for dismissal under Rule 41(b).

Defendant's fifth assignment of error asserts that:

"The court below erred in signing the judgment in this case for that the evidence is not sufficient to support the findings of fact or the conclusions of law set forth in the judgment or to support a judgment in favor of the plaintiff and against the defendant."

[6]   This assignment of error attempts to present several propositions of law and could be held to be broadside and ineffective. *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970). There is no exception appearing in the record to any specific finding of fact. However, the sufficiency of the evidence has been considered under other assignments of error.

[7]   Exception number 5, upon which assignment of error number 5 is based, appears in the record after the signature to the judgment and can be considered only as an exception to the judgment. "An exception to the judgment does not present for review the findings of fact or the evidence on which they are based." 1 Strong, N.C. Index 2d, Appeal and Error, § 28. Furthermore, nothing appears in the record in connection with exception number 5 to indicate that it relates to any specific finding of fact. "When there is no exception to the findings of fact by the court, the facts found will be assumed correct and supported by the evidence * * * ." 1 Strong, N.C. Index 2d, Appeal and Error, § 28. This exception and assignment of error number 5, therefore, does not present the question of the insufficiency of the evidence to support the findings of fact.

In 1 Strong, N.C. Index 2d, Appeal and Error, § 28, the rule is stated:

" \* \* \* However, an exception that the findings of fact are not sufficient to support the judgment presents for review the question whether the court's conclusions of law from the findings of fact are unwarranted or erroneous. And even when the exceptions to the findings of fact are too general to be effective, the appeal itself constitutes an exception to the judgment and raises the question of law whether the facts found support the judgment and whether error of law appears on the face of the record proper."

See also *State v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1970); *Lewis v. Parker,* 268 N.C. 436, 150 S.E. 2d 729 (1966).

We hold that no prejudicial error appears on the face of the record proper, that the material findings of fact are sufficient to support the conclusions of law, and that the findings of fact and conclusions of law support the judgment rendered.

Affirmed.

Judges PARKER and GRAHAM concur.