MARY ALICE BRYANT v. HAYWARD KELLY, JR., AND CLARETHA SIMMONS KELLY; LINSTER O. SIMMONS AND WIFE, BLANCHIE SIMMONS; RAYMOND C. SIMMONS AND WIFE, REATHER SIMMONS; RANDOLPH SIMMONS AND WIFE, ETHEL SIMMONS; AND KADELL SIMMONS AND WIFE, LOUISE M. SIMMONS; ROBERT H. SIMMONS AND WIFE, FANNIE SIMMONS; CLEO ROOSEVELT SIMMONS; AND CHARLIE EDWARD SIMMONS

No. 703DC439

(Filed 30 December 1970)

1. **Rules of Civil Procedure § 50— motion for directed verdict — jury trial**

Motion for a directed verdict under Rule 50(a) is proper when trial is being held before a jury. G.S. 1A-1, Rule 50(a).

2. **Rules of Civil Procedure § 41— motion for involuntary dismissal — trial without jury**

Motion for involuntary dismissal under Rule 41(b) is proper when the case is tried by the judge without a jury. G.S. 1A-1, Rule 41(b).

3. **Rules of Civil Procedure § 41— trial without jury — motion to dismiss — function of the judge**

In a nonjury case, the function of the judge on a motion to dismiss under Rule 41(b) is to evaluate the evidence without any limitations as to the inferences which the court must indulge in favor of the plaintiff's evidence on a similar motion for a directed verdict in a jury case.

4. **Rules of Civil Procedure § 52; Appeal and Error § 57— findings of fact by the trial court — review on appeal**

Where the trial court as the trier of facts has found the facts specially, such findings are conclusive on appeal if supported by competent evidence, even though there may be evidence which might sustain findings to the contrary.

5. **Rules of Civil Procedure § 41— motion for involuntary dismissal — incorrect designation as motion for directed verdict**

Although the defendants' motion for dismissal in a nonjury trial was incorrectly designated as a motion for a directed verdict, the trial court properly treated the motion as a motion for involuntary dismissal under Rule 41(b).

6. **Rules of Civil Procedure § 52— findings of fact by the trial court — prerequisites**

The trial court in a nonjury trial must find the facts specially and state separately its conclusions of law thereon. G.S. 1A-1, Rule 52(a).

7. **Trusts § 13— action to impose parol trust on land — evidence precluding existence of trust**

In an action to impose a parol trust on land held by the heirs of plaintiff's brother, plaintiff's evidence that her brother acquired title

to the land more than one year *prior* to the time that she and her brother made an oral agreement whereby the brother was to purchase the land and hold title for the benefit of plaintiff, *is held* to preclude the existence of a parol trust.

**8. Trusts § 13— action to impose resulting trust on land — evidence precluding existence of trust**

In an action to impose a resulting trust on land held by the heirs of plaintiff's brother, plaintiff's evidence that her brother purchased and received title to the land more than one year *prior* to the time that payment was made on behalf of plaintiff for the land, *is held* to preclude the existence of a resulting trust.

APPEAL by plaintiff from *Roberts, Chief District Judge,* 23 March 1970 Session of CRAVEN District Court.

This is a civil action to establish a trust in favor of plaintiff in a described tract of real property in Craven County, N. C. In her complaint plaintiff alleged: That on or about 16 November 1946 plaintiff and Leonard Nixon Simmons entered into an agreement for the purchase of a larger tract; that the purchase price was $805.00; that it was then agreed between the parties that plaintiff should contribute $250.00 in cash toward the purchase price and that plaintiff should own a certain described portion of the land; that plaintiff did contribute and pay said sum of money and Leonard Nixon Simmons, using said money, "did purchase said property pursuant to said agreement and a Deed thereof was taken in the name of said Leonard Nixon Simmons, and said Leonard Nixon Simmons thereupon agreed with plaintiff that he would hold in his name plaintiff's interests in said property in trust for plaintiff, and he did so until his death on or about August 26, 1966." Plaintiff further alleged that she had demanded of defendants, heirs at law of Leonard Nixon Simmons, that they convey plaintiff's portion of the lands to her, but that they have refused to do so, "claiming to own the whole of said property, repudiating said trust imposed on the property by said Leonard Nixon Simmons, and denying that plaintiff has any interest in said property."

Defendants answered, denying the material allegations in the complaint, and affirmatively pleading laches and the statute of limitations.

The case was tried before Chief District Judge Roberts without a jury. The parties stipulated that Miles Simmons, father of Mary Alice Bryant and Leonard Nixon Simmons,

owned the subject lands prior to 1942, that the lands were part of those which were foreclosed for taxes by Craven County and conveyed by John A. Guion, Commissioner, to Craven County by deed dated 20 April 1942, and that the subject lands were conveyed to Leonard Simmons for a consideration of $805.00 on 16 November 1946, by deed recorded in the office of the Register of Deeds of Craven County.

Plaintiff introduced evidence in substance as follows:

Plaintiff testified that she was living on the land in 1942 and in 1946 and continued to live there for about fifteen years after 1946, that she farmed the land and cut timber off it, and that no objections were made to her farming or cutting timber until after her brother, Leonard, died.

Earl Bryant, plaintiff's husband, testified that he paid Leonard Simmons $250.00 for the purpose of buying the land back in, and that Romance Simmons, wife of Leonard Simmons, wrote a receipt for the money and gave it to him in Leonard Simmons' presence; that this occurred before the deed was drawn to Leonard Simmons; that he paid the money before Leonard Simmons got the land; that Leonard told Romance to give him a receipt; that at the time the money was paid and Romance Simmons wrote the receipt, she was married to Leonard Simmons; and that he only paid Leonard money for the land one time.

Romance Simmons testified that she was home when Earl Bryant came to the house and Leonard Simmons told her to write the receipt for $250.00; that "[t]he receipt was supposed to be for Mary Alice's part of the land"; that she was married to Leonard at the time the receipt was written, and she and Leonard were married on 28 January 1947; that when she wrote the receipt she made a copy, which she still had, and the copy of the receipt reads: "November 28, 1947, received from Earl Bryant $250 for property; $250 (signed) Leonard Simmons"; that she wrote the receipt and signed it and Leonard told her to do so.

Madeline Banks, daughter of the plaintiff, testified that she had heard her mother and father and her uncle Leonard Simmons discussing the purchase of the land; that her uncle Leonard asked them if they wanted to buy the land in with him, and they said that they did; that later they got the money

Bryant v. Kelly

together and gave him the money; that she did not know the date, but it was in the fall of the year.

At the close of plaintiff's evidence, defendants moved for a directed verdict in their favor, which motion was allowed. The trial judge then signed judgment which, after reciting the plaintiff's evidence, is as follows:

"Upon the foregoing evidence as above recited, the undersigned finds as a fact, that:

"(a) Leonard Nixon Simmons purchased the subject lands for $805.00 on November 16, 1946, and took a deed in his name on that date, having the same recorded in Book 402, at Page 149, in the Office of the Register of Deeds of Craven County, North Carolina;

"(b) Leonard Nixon Simmons married Romance Simmons on January 28, 1947;

"(c) Earl Bryant paid $250.00 to Leonard Nixon Simmons on behalf of his wife, the plaintiff, after Leonard Nixon Simmons married Romance Simmons;

"(d) Earl Bryant paid $250.00 'for property' to Leonard Nixon Simmons on behalf of his wife, the plaintiff, on November 28, 1947;

"(e) There was no agreement between plaintiff and Leonard Nixon Simmons on the subject lands binding on Leonard Nixon Simmons unless and until plaintiff paid the sum of $250.00.

"Upon the foregoing Findings of Fact, the undersigned makes the following

"CONCLUSIONS OF LAW:

"At the time of his death on August 26, 1966, Leonard Nixon Simmons did not hold the subject lands in trust for the plaintiff, Mary Alice Bryant, as a result of the plaintiff paying or causing to be paid a portion of the purchase price of the said lands, neither as a result of any agreement binding between the parties prior to the purchase of said subject lands by Leonard Nixon Simmons.

"Now, THEREFORE, it is ORDERED and ADJUDGED that defendants' motion for directed verdict in favor of defend-

ants at the close of plaintiff's evidence should be and the same hereby is allowed. Plaintiff to pay the costs.

"This 23rd day of March, 1970.

"/s/ J. W. H. Roberts
"Chief Judge"

To the entry of this judgment plaintiff excepted and appealed, assigning errors.

*Brock & Gerrans by Donald P. Brock for plaintiff appellant.*

*Beaman & Kellum by Norman B. Kellum, Jr., for defendant appellees.*

PARKER, Judge.

**[1, 2]** Motion for a directed verdict under Rule 50 (a) of the Rules of Civil Procedure is proper when trial is being held before a jury. This case was tried by the judge without a jury. The appropriate motion in such case is for involuntary dismissal under Rule 41 (b). Therefore, we will treat defendants' motion as a motion for an involuntary dismissal under Rule 41 (b).

Rule 41 (b) reads in part:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 (a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this section and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a necessary party, operates as an adjudication upon the merits."

Rule 52 (a) contains the following:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts spe-

cially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment."

[3, 4] In a nonjury case, in which all issues of fact are in any event to be determined by the judge, the function of the judge on a motion to dismiss under Rule 41(b) is to evaluate the evidence without any limitations as to the inferences which the court must indulge in favor of the plaintiff's evidence on a similar motion for a directed verdict in a jury case. (See cases cited in 2 B, Barron and Holtzoff, Federal Practice and Procedure, § 919, interpreting the cognate Federal Rules.) Where, as in the present case, the trial court as the trier of the facts has found the facts specially, such findings are conclusive upon appeal if supported by competent evidence, even though there may be evidence which might sustain findings to the contrary. In such case "[t]he trial judge becomes both judge and juror, and it is his duty to consider and weigh all the competent evidence before him. *Hodges v. Hodges*, 257 N.C. 774, 127 S.E. 2d 567. He passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom. If different inferences may be drawn from the evidence, he determines which inferences shall be drawn and which shall be rejected." *Knutton v. Cofield*, 273 N.C. 355, 160 S.E. 2d 29.

[5, 6] In the present case, even though defendants' motion was incorrectly designated as a motion for a directed verdict, the trial judge complied with the provisions of Rule 41(b). As trier of the facts, he determined them and rendered judgment on the merits against the plaintiff. He also complied with Rule 52(a) by finding the facts specially and stating separately his conclusions of law thereon. His findings of fact are clearly supported by the evidence, and are binding upon this Court on appeal. The question before us, therefore, is whether the facts found support the conclusions of law and the judgment. We hold that they do.

[7] In her complaint, plaintiff alleged facts which would support recovery on either of two theories: That either a parol trust or a resulting trust came into existence by reason of her dealings with her brother. To recover upon the theory of a parol trust, plaintiff must prove the existence of the alleged oral agreement with her brother, Leonard, to purchase the land and hold title for the benefit of the plaintiff, and must prove that this agreement was entered into before or at the time title passed to her brother. "One who is already the holder of the legal title

to land cannot create a valid trust therein by an oral declaration that he or she will hold the land in trust for another, or by an oral promise to convey the land to another at a future date." *Beasley v. Wilson,* 267 N.C. 95, 147 S.E. 2d 577. Here, on competent evidence, the trial judge has found that there was no binding agreement between plaintiff and her brother until plaintiff paid the sum of $250.00, and that this payment was made on 28 November 1947. The parties stipulated, and the court found, that title passed to the brother on 16 November 1946. Therefore, under the facts found and stipulated, no binding parol trust could arise.

[8]  The same is true of a resulting trust. "A resulting trust arises, if at all here, from the payment of the purchase money, and accordingly it is essential to the creation of such a trust that the money or assets furnished by or for the person claiming the benefit of the trust should enter into the purchase price of the property at or before the time of purchase." *Vinson v. Smith,* 259 N.C. 95, 130 S.E. 2d 45. Here, on competent evidence, the trial judge has found that the $250.00 payment was made on behalf of plaintiff to her brother more than a year after he had purchased and received title to the property. On this finding, no resulting trust could arise.

In their brief on this appeal, plaintiff's counsel contend that at the time the property was conveyed to Craven County in 1942 for failure to pay taxes, the plaintiff and her brother were tenants in common. From this they argue that when Leonard purchased in 1946, his acquisition of the outstanding title inured to the benefit of his cotenant, citing *Bailey v. Howell,* 209 N.C. 712, 184 S.E. 476. This theory, however, is not available to plaintiff on this appeal. There was here neither allegation nor proof that plaintiff and her brother ever held title as cotenants. It was stipulated that their father owned the subject lands prior to 1942, but there was no evidence to indicate when their father died and whether testate or intestate.

We note also that while plaintiff alleged that defendants were the heirs at law of her brother, Leonard, her evidence indicates that her brother left a will which has been admitted to probate. However, in any event defendants appear to be proper parties in this case as successors in interest to Leonard Nixon Simmons, since it is stated in their brief on this appeal that they are his devisees.

We have reviewed plaintiff's other assignments of error and find no prejudicial error.

For the reasons stated, the judgment appealed ·from is

Affirmed.

Chief Judge MALLARD and Judge GRAHAM concur.