HOBSON CONSTRUCTION CO., INC., PLAINTIFF v. HAJOCA
CORPORATION, DEFENDANT

No. 7528SC739

(Filed 17 March 1976)

1. **Rules of Civil Procedure § 41— nonjury trial — motion for dismissal — evidence weighed by trial judge**

    In a nonjury case G.S. 1A-1, Rule 41(b) provides a procedure whereby, at the close of plaintiff's evidence, the judge can give judgment against plaintiff not only because his proof has failed in some essential aspect to make out a case but also on the basis of facts as he may then determine them to be from the evidence then before him, and, as trier of the facts, the judge may weigh the evidence, find the facts against plaintiff and sustain defendant's motion at the conclusion of his evidence even though plaintiff has made out a *prima facie* case which would have precluded a directed verdict pursuant to G.S. 1A-1, Rule 50(a), for defendant in a jury case.

2. **Uniform Commercial Code § 15— water filter tanks used under excessive pressure — no breach of implied warranty of merchantability**

    Water filter tanks purchased by plaintiff from defendant were not defective and in breach of the implied warranty of merchantability where the evidence established that the tanks were used under excessive water pressure, which was not the ordinary purpose for which the goods were sold. G.S. 25-2-314(2).

3. **Uniform Commercial Code § 15— purchase of equipment — no implied warranty**

    In an action for damages resulting from defective equipment purchased from defendant, evidence was sufficient to support the trial court's conclusion that there was no implied warranty by defendant of the fitness of the equipment upon which plaintiff relied where such evidence tended to show that plaintiff purchased the equipment in reliance upon the specifications of its contract with a third party and not in reliance upon any representation by defendant as to the merchantability or fitness of the equipment for its intended use. G.S. 25-2-315.

4. **Uniform Commercial Code § 15— no affirmation of fact affecting bargain — no express warranty**

    In an action for damages resulting from defective equipment purchased from defendant, the trial court properly determined that there was no express warranty made by defendant since there was no affirmation of fact by defendant which affected the bargain. G.S. 25-2-313.

APPEAL by plaintiff from *Snepp, Judge.* Judgment entered 29 May 1975 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 14 January 1976.

Plaintiff [Hobson] brought this action against defendant [Hajoca] for damages resulting from defective equipment pur-

chased from Hajoca. It was alleged that the defects amounted to a breach of warranties. Hajoca denied that the equipment was defective and denied liability.

The case was tried without a jury and plaintiff's evidence tended to establish the following:

Triple Community Water Corporation [Water Corp.], located in Drexel, North Carolina, retained the services of Register & Cummings, Engineers, to prepare plans and specifications for a water treatment and conditioning plant. Hobson entered into a contract with the Water Corporation to construct the plant in accordance with the plans and specifications of the engineers.

The plant was to be built primarily for the purpose of filtering iron and manganese from the water supply. The engineers' specifications provided that "filter equipment shall be similar and equal to Diamond Model Three (3) DMG 84-45 as manufactured by Oshkosh Filter and Softener Company." Further specifications provided that the "plate shall contain a sufficient number of corrosion resistant segmented plastic distributors with stainless steel bolts to provide uniform distribution." It was established that Oshkosh was the only company that manufactured the segmented plastic distributors.

Hobson purchased from Hajoca three Diamond Model Three (3) DMG 84-45 filter tanks which were manufactured by Oshkosh. One of Hajoca's representatives stated to Hodson's president that the filter tanks being sold "should remove the iron and manganese from the water."

Near the bottom of each filter tank was a steel plate with fifty-two threaded holes with nipples screwed into them. A segmented plastic distributor head was attached to each nipple. The distributor heads were plastic with small holes through which the filtered water could pass.

The steel plate and distributor heads were covered with silica sand, and above the silica sand was a layer of "green sand." Raw water flowed into the tank at the top, chemicals were added, and the water was supposed to react with the chemicals and green sand in such a way that the iron and manganese would stick to the particles of green sand leaving the finished water to flow through the silica sand and distributor heads and on out the bottom of the tank.

Difficulties developed after the filter tanks were installed in April of 1971. The finished water contained silica sand and green sand, and not enough iron and manganese was removed to comply with government requirements. There were also other serious difficulties and problems. The distributor heads either ruptured or disintegrated and the silica sand and green sand that remained in the tanks became mixed together.

In December of 1971 plaintiff took out the distributor heads, nipples, silica sand and green sand, and bored 88 new holes into the steel plate. The 52 plastic distributor heads and nipples were replaced with 140 stainless steel ones manufactured by a different company. The water treatment plant worked very well thereafter and produced good water.

The president of Hobson testified that he believed the difficulties with the filter tanks were caused by an insufficient number of distributor heads for the amount of water passing through the tanks, and that the distributor heads broke under the excessive water pressure.

At the conclusion of plaintiff's evidence the trial court granted defendant's motion for involuntary dismissal under Rule 41(b) of the N. C. Rules of Civil Procedure. The court made findings of fact and conclusions of law and held that there was no breach by defendant of any express or implied warranty. Plaintiff appealed to this Court.

*Uzzell and DuMont, by William E. Greene, for plaintiff appellant.*

*Morris, Golding, Blue and Phillips, by James W. Golding, for defendant appellee.*

ARNOLD, Judge.

By its first assignment of error plaintiff argues that the evidence, viewed in the light most favorable to it, and giving to it the benefit of all reasonable inferences and resolving all inconsistencies in its favor, was sufficient to show its right to relief. It contends that the court erred in granting defendant's motion for dismissal under Rule 41(b). The assignment is without merit.

G.S. 1A-1, Rule 41(b) states:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evi-

dence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. *The court as trier of the facts may then determine them and render judgment against the plaintiff* or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)." (Emphasis added.)

Plaintiff's contentions and arguments as presented in its brief, though phrased in terms of Rule 41(b), apply the standards applicable to Rule 50(a) motions for directed verdicts. The distinction between a Rule 50(a) motion for directed verdict and a Rule 41(b) motion for involuntary dismissal is more than one of mere nomenclature. A different test is to be applied to determine the sufficiency of the evidence to withstand the motion when the case is tried before a court and jury than when the court alone is finder of the facts. *Helms v. Rea,* 282 N.C. 610, 194 S.E. 2d 1 (1973); *Neff v. Coach Co.,* 16 N.C. App. 466, 192 S.E. 2d 587 (1972).

[1] "In a nonjury case . . . , Rule 41(b) now provides a procedure whereby, at the close of plaintiff's evidence, the judge can give judgment against plaintiff not only because his proof has failed in some essential aspect to make out a case but also on the basis of facts as he may then determine them to be from the evidence then before him. As trier of the facts, the judge may weigh the evidence, find the facts against plaintiff and sustain defendant's motion at the conclusion of his evidence even though plaintiff has made out a *prima facie* case which would have precluded a directed verdict for defendant in a jury case." *Helms v. Rea, supra,* 618-619.

The trial judge's evaluation of the evidence pursuant to a Rule 41(b) motion to dismiss is to be made free of any limitations as to the inferences which a court must indulge in favor of plaintiff's evidence on a motion for directed verdict. *Fearing v. Westcott,* 18 N.C. App. 422, 197 S.E. 2d 38 (1973); *Bryant v. Kelly,* 10 N.C. App. 208, 178 S.E. 2d 113 (1970). Where the trial judge sits as trier of facts, his findings are conclusive upon appeal if supported by competent evidence, even though there may be evidence to the contrary. *Bryant v. Kelly, supra.*

Construction Co. v. Hajoca Corp.

By its second assignment of error plaintiff contends the court erred in several of its findings of fact and conclusions of law. Plaintiff again mistakenly argues that the court was required to view the evidence in the light most favorable to it. As has already been said, this is not correct when the court is ruling on a motion for involuntary dismissal under Rule 41(b).

The court was free to make whatever findings it deemed appropriate, and to draw unfavorable inferences to plaintiff, so long as the findings were supported by competent evidence and were sufficient to support its conclusions of law. The findings of fact are clearly supported by competent evidence and court's conclusions are all supported by the findings of fact.

In its third assignment of error plaintiff contends the court erred in failing to make findings of fact in accord with findings of fact requested by plaintiff. This position is untenable for reasons stated in the preceding paragraph.

[2] Plaintiff maintains that the filter tanks were defective and in breach of the implied warranty of merchantability. We find no evidence that the tanks were unmerchantable. Plaintiff asserts that the distributor heads were not "fit for the ordinary purposes for which such goods are used" as required by G.S. 25-2-314(2). The evidence, however, merely establishes that the distributor heads were not fit for use under excessive water pressure as contained by the Water Corp.'s system, which was not the ordinary purpose for which the goods were sold.

[3] In regards to any implied warranty of fitness for a particular purpose the court made the following conclusion: "The plaintiff has failed to present evidence of any implied warranty by Hajoca of the fitness of the system to perform its intended purpose, upon which plaintiff relied." That conclusion is supported by the court's finding that under its contract with the Water Corp. plaintiff was required by the specifications, prepared by the engineers, to use the equipment specified as the 3 Model DMG 84-4 [sic] [84-45] Diamond filter units manufactured by Oshkosh, and that plaintiff purchased "in reliance upon the specifications, and pursuant to its contract, and not in reliance upon any warranty, affirmation, or representation, express or implied, by Hajoca as to the merchantability or the fitness of the system for its intended use." There is no warranty of fitness for a particular purpose unless "the buyer is

relying on the seller's skill or judgment to furnish suitable goods." G.S. 25-2-315.

**[4]** G.S. 25-2-313 contains the requirements for express warranties. Any affirmation of fact or promise made by the seller concerning the goods sold is an express warranty if it "becomes part of the basis of the bargain." There was no express warranty in the present case in view of the following finding of fact made by the court: "The statements of Hajoca's manager to plaintiff to the effect that the apparatus 'should' be able to remove iron and manganese from the water did not amount to an affirmation of fact effecting [sic] the bargain between plaintiff and Hajoca."

Plaintiff further argues that notwithstanding any other statements made by Hajoca an express warranty arose from the fact that the tanks were described as "iron removal filters." This argument has no merit. There is no evidence that the tanks were not "iron removal filters." They simply failed to sufficiently filter the water under the system as it was designed by the Water Corp., and from the evidence the defect was in the plans and specifications of the engineers, and not the filter tanks.

The judgment appealed from is affirmed.

Affirmed.

Judges PARKER and HEDRICK concur.