SOUTHEASTERN ADHESIVES COMPANY v. FUNDER AMERICA, INC.

No. 8725SC919

(Filed 5 April 1988)

1. **Uniform Commercial Code § 12— sale of urea resins—implied warranty of merchantability—allegations sufficient to raise claim**
    Defendant's counterclaim was sufficient to state a claim for breach of implied warranty of merchantability where the parties stipulated that they were merchants; defendant alleged that it purchased urea resins from plaintiff but no payments were made because the resins contained latent defects attributable to plaintiff's manufacture which rendered the goods unusable; the defective resin proximately caused defendant injury; and defendant gave notice of the defect to plaintiff.

2. **Uniform Commercial Code § 12— sale of urea resins—claim of breach of implied warranty of merchantability—no disclaimer by words on bill of lading**
    Plaintiff could not defeat defendant's claim of breach of implied warranty of merchantability by arguing that it had disclaimed all warranties by virtue of a disclaimer printed on the back of each bill of lading, since the parties had done business in the same manner for more than ten years; their custom was that defendant would place a telephone order, within days plaintiff would ship

the resin, defendant would send a written purchase order confirming the oral order, and plaintiff would bill defendant by invoice; the parties therefore contracted for the shipment and delivery of resins when defendant telephoned his order to plaintiff, and the disclaimer of warranties was a proposal for additional terms to the contract; the written purchase orders did not expressly limit acceptance to their terms; and the disclaimers were ineffective because they materially altered the contracts. N.C.G.S. § 25-2-207(2).

3. **Uniform Commercial Code § 14— specifications for manufacturer of resin given by purchaser—no implied warranty of fitness for particular purpose**

In an action to recover the costs of urea resins which plaintiff sold to defendant but which defendant alleged were defective, no implied warranty of fitness for a particular purpose arose because defendant provided plaintiff with the specifications to manufacture the resins. N.C.G.S. § 25-2-315.

4. **Uniform Commercial Code § 12— sale of urea resins—examination by purchaser's chemist—latent defects alleged—breach of implied warranty of merchantability**

In an action to recover the costs of urea resins which plaintiff sold to defendant but which defendant alleged were defective, there was no merit to plaintiff's argument that defendant's chemist's examination and inspection of the resin before acceptance precluded defendant from recovering on its counterclaim for breach of implied warranty of merchantability as a matter of law, since defendant specifically alleged that the defects present in the resin were latent defects, and this raised the issue of whether the chemist should have discovered the defects. N.C.G.S. § 25-2-316.

APPEAL by defendant from *Sherrill (W. Terry), Judge.* Order entered 27 May 1987 in Superior Court, CALDWELL County. Heard in the Court of Appeals 11 February 1988.

Plaintiff seeks to collect $6,783.00 plus interest as payment for its delivery of four separate shipments of urea resin to defendant. Defendant uses the resin in its melamine fabrication process. In its answer defendant admitted delivery of the resin and further admitted its refusal to pay upon plaintiff's demand. Defendant counterclaimed stating that payment was withheld because the resin shipped contained latent defects and, therefore, plaintiff had breached its implied warranty of merchantability and its implied warranty of fitness for a particular purpose.

On 27 May 1987 plaintiff orally moved for summary judgment on defendant's counterclaim. After hearing certain stipulations agreed to by the parties, the court granted plaintiff's motion as to the counterclaim. Because defendant's refusal to pay was based exclusively upon plaintiff's breach of the implied warranties, the

court then granted summary judgment in favor of plaintiff on plaintiff's complaint. Defendant appeals.

*Bell, Davis & Pitt, by Joseph T. Carruthers and J. Dennis Bailey; Petree Stockton & Robinson, by Leon E. Porter, Jr., for plaintiff-appellee.*

*Martin & Van Hoy, by Henry P. Van Hoy, II, and G. Wilson Martin, Jr., for defendant-appellant.*

EAGLES, Judge.

Defendant appeals the trial court's grants of summary judgment against defendant's counterclaim and in favor of plaintiff's complaint. While we find that there are genuine issues of material fact presented by defendant's allegations of breach of the implied warranty of merchantability, we conclude that summary judgment on defendant's claim of breach of the implied warranty of fitness for a particular purpose was proper. Accordingly, we reverse in part, affirm in part and remand for trial.

The questions presented on appeal of a summary judgment motion are whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Ellis v. Williams*, 319 N.C. 413, 355 S.E. 2d 479 (1987). In making this determination "[a]ll inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion." [Citation omitted.] *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E. 2d 325, 335 (1981). A summary judgment motion does not require the court to rule upon questions of fact, but requires only that the court determine whether a genuine issue of material fact exists. *Id.* Summary judgment will be sustained if the movant demonstrates either the nonexistence of an essential element of the claims made or a valid defense to the claims presented as a matter of law. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979).

[1] Defendant may recover on its counterclaim for breach of the implied warranty of merchantability if it establishes that:

(1) a merchant sold goods, (2) the goods were not "merchantable" at the time of sale, (3) the plaintiff (or his property) was injured by such goods, (4) the defect or other condition amounting to a breach of the implied warranty of merchant-

ability proximately caused the injury, and (5) the plaintiff so injured gave timely notice to the seller.

*Reid v. Eckerds Drugs,* 40 N.C. App. 476, 480, 253 S.E. 2d 344, 347, *disc. rev. denied,* 297 N.C. 612, 257 S.E. 2d 219 (1979). Defendant's counterclaim alleges each of these elements. First, the parties stipulated that they were merchants. The gravamen of defendant's counterclaim is that no payments were made because the resins contained latent defects attributable to plaintiff's manufacture which rendered the goods unusable. Defendant further alleges that the defective resin proximately caused defendant injury and that it gave notice of the defect to plaintiff.

[2] The only proof presented at the summary judgment hearing by plaintiff was the parties' stipulation. Plaintiff did not argue the nonexistence of any of the essential elements necessary to show breach of either of the implied warranties. Instead, it argued that it had valid defenses against defendant's breach of warranties counterclaim as a matter of law. In particular, plaintiff argued that it had disclaimed all implied warranties.

The facts here, considered in the light most favorable to the defendant, show the following: The parties stipulated that they are merchants, that they had "done business with each other since 1974," and that their business together involved defendant's purchases of a urea resin from plaintiff. Defendant demanded certain specifications and requirements in plaintiff's manufacturing of the resin.

On each of the four occasions in question defendant first made an oral purchase order by telephone. The record does not show that any disclaimers of warranty were made at these times. Within a short time plaintiff shipped the resin to defendant accompanied by a bill of lading. Before defendant accepted each shipment its chemist conducted tests on the resin to determine whether it met defendant's specifications. Defendant rejected the first shipment in question here and returned it to plaintiff for filtering. After filtering, the shipment was sent back to defendant the next day. This time defendant accepted the resin. Defendant accepted each of the three remaining shipments after the chemist indicated that the resin met defendant's requirements.

Defendant's agents signed the bills of lading acknowledging receipt of the resin and retained a copy for defendant's files. The

back of each of the bills of lading contained disclaimers of the warranty of merchantability and the warranty of fitness for a particular purpose. Soon thereafter plaintiff received a written purchase order from defendant which confirmed the oral order and plaintiff then billed defendant by invoice.

Plaintiff first contends that it has a valid defense as a matter of law to defendant's counterclaim in that it disclaimed all implied warranties. Plaintiff argues that no contract between the parties was formed until defendant's agent signed the bill of lading containing an additional contract term, the disclaimer provision. Plaintiff contends its acceptance of defendant's offer was, pursuant to G.S. 25-2-207(1), "conditional on [defendant's] assent to the additional or different terms." Therefore, plaintiff argues, defendant agreed to the additional term making the disclaimer a part of the contract between the parties. We disagree and hold that plaintiff's attempted disclaimer of warranties was not a part of the contract.

G.S. 25-2-204(1) provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." The parties stipulated that they had been conducting their business with one another since 1974. Furthermore, each of the shipments here followed the same pattern or course of dealing: defendant would place a telephonic order, within days plaintiff would ship the resin, defendant would send a written purchase order confirming the oral order, and finally, plaintiff would bill defendant by invoice.

This course of dealing between the parties indicates that they intended to contract and that a contract was formed when defendant called and ordered the resin shipped. Apparently the parties had conducted their business in this fashion for the more than ten years they had dealt with one another. Accordingly, we hold that the parties contracted for the shipment and delivery of urea resins when defendant telephoned his order to plaintiff.

We view the disclaimer of warranties as a proposal for additional terms to the contract. *See Hosiery Mills v. Burlington Industries*, 285 N.C. 344, 204 S.E. 2d 834 (1974). G.S. 25-2-207(2) addresses this issue and provides that

[t]he additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Defendant argues that its written purchase orders expressly limited acceptance to their terms. We disagree. On four different occasions the parties orally contracted for the shipment and delivery of urea resins. Each of the purchase orders later sent by defendant were merely confirmations of the earlier agreed upon oral contracts. This record does not reflect any statement made by defendant at the times of contracting which expressly limited plaintiff's ability to accept any of the offers.

Defendant argues alternatively that the disclaimers are ineffective because they "materially alter" the contracts. We agree. The "Official Comment" following G.S. 25-2-207 states:

Examples of typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party are: a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches.

A term which so drastically affects the remedies available to the buyer upon seller's breach must be considered a material alteration when not explicitly negotiated by the parties. *See Hosiery Mills*, 285 N.C. at 357 (addition of an arbitration clause to an oral contract constitutes a material alteration). Therefore, plaintiff's attempt to add a disclaimer of warranties to the parties' contracts was ineffective.

[3] Plaintiff next argues that it has a defense to both warranty claims as a matter of law in that it produced the resin to defendant's specifications and, therefore, no implied warranties arise. Quoting G.S. 25-2-315 this Court in *Construction Co. v. Hajoca*

*Corp.*, 28 N.C. App. 684, 688-689, 222 S.E. 2d 709, 712 (1976), stated that "[t]here is no warranty of fitness for a particular purpose unless 'the buyer is relying on the seller's skill or judgment to furnish suitable goods.'" When the buyer provides the specifications for goods to be purchased, there is no reliance on the seller's skill. *See* G.S. 25-2-315 Official Comment 2; *Blockhead, Inc. v. Plastic Forming Company, Inc.*, 402 F. Supp. 1017 (D. Conn. 1975). Here, since plaintiff properly manufactured the urea resin to defendant's specifications, no implied warranty of fitness for a particular purpose arises.

On the other hand, the implied warranty of merchantability requires no reliance by the buyer upon the seller's skill. G.S. 25-2-314(1) provides that "[u]nless excluded or modified (G.S. 25-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Plaintiff must be considered a merchant with respect to the resin since it stipulated that it is a merchant and it has been conducting this particular business since 1974. Though we hold no implied warranty of fitness for a particular purpose arises here because defendant provided plaintiff with the specifications to manufacture the resin, the implied warranty of merchantability exists in any sales contract where the seller is a "merchant with respect to [the] goods" sold. *Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E. 2d 161 (1972).

[4]  Plaintiff further contends that defendant's chemist's examination and inspection of the resin before acceptance precludes defendant from recovering on its counterclaim as a matter of law. We disagree.

Plaintiff correctly argues that G.S. 25-2-316 allows words or conduct to disclaim implied warranties. Additionally, "when the buyer before entering into the contract has examined the goods . . . as fully as he desired . . . there is no implied warranty *with regard to defects which an examination ought in the circumstances to have revealed to him.*" G.S. 25-2-316(3)(b). Defendant's counterclaim specifically alleges that the defects present in the resin were *latent* defects. This raises the issue of whether the chemist should have discovered the defects. The parties' stipulations indicate the tests conducted were simply "to insure that the resin met all the specifications and requirements as given to the plaintiff."

Professional buyers "will be held to have assumed the risk as to all defects which a professional in the field ought to observe." G.S. 25-2-316 Official Comment 8. The record does not indicate whether the chemist's tests could have or should have discovered the latent defects. We hold that this raises a genuine issue of material fact and does not demonstrate a defense to defendant's counterclaim as a matter of law.

In summary, we hold that summary judgment in favor of plaintiff on defendant's counterclaim of breach of warranty of fitness for a particular purpose was proper and that portion of the trial court's order is affirmed. However, defendant's counterclaim for breach of warranty of merchantability raises genuine issues of material fact and that portion of the trial court's order is reversed. Because of our ruling here we reverse the trial court's order granting summary judgment to plaintiff on plaintiff's original claim. The case is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded.

Judges WELLS and GREENE concur.